Good afternoon, your honors. I hope you can hear me. I may please record Kenneth Yoon for appellate, Appellant Chansue Kang. I think I'd like to summarize, maybe reserve five minutes for rebuttal. I think the key issue here with the N.R. appeal is that the district court ruled as a matter of law replacing the trier fact weighing of evidence with its own. And it did this by weighing the fact that the subject product was cheap and that the idea that a cheap product, which is not in the evidence, isn't sufficient to allow a consumer to believe that the product contained any real crab. And second, that the word crab with a K in an ingredient means that no reasonable consumer could believe that they should have knowledge that that means that there's zero percent authentic crab in the crab mix. And we believe that this is something that should, like most cases in this area, should rarely be granted on a dismissal on a 12b motion and it should be decided later on by the court, a trial preferably, but at the very least on a MSJ type of a motion. And that it was in error, reversible error for the court to dismiss without leave to amend, as at the very least we should have had the opportunity to amend the complaint to add additional facts, which we were prepared to do. Counsel, you have no problem, I take it, the court looking at the actual menu, right? Well, I think the appellee has an issue with that in that in another part of the argument, but the fact that the menu wasn't actually provided in full is a bit of an issue. But I think that the issues that were raised by P.F. Chang were in the record. So here's where I have a problem with your argument, counsel. The California law requires that a significant portion of the general consuming public or the targeted consumers acting reasonably could be misled. And I'm having difficulty understanding how a menu that advertises Crab C.R.A.B. or that lists Crab C.R.A.B. and Crab K.R.A.B. that a reasonable consumer in a restaurant who can ask questions, that a significant portion are going to be misled into thinking that K.R.A.B. has C.R.A.B. in it. And I think we do get to look as a matter of law about what a reasonable consumer would do. And it's just it seems very farfetched to me to see how a reasonable consumer in the circumstances here, a substantial portion would be reasonably would be misled. And I'd like you to try to focus on especially that there's C.R.A.B. on the menu. Well, first, the fact that there's C.R.A.B. on the menu doesn't actually mean that there's actually any C.R.A.B. in that dish. That's just something that the court mentioned or the defendants mentioned, but it's not alleged in our complaint. But secondarily, the other important factor, I think, is it's K.R.A.B. mix. It's not K.R.A.B. and no C.R.A.B. mixed. So it's a mix of crab with not crab with a C, but it's crab mix. And I think that there's evidence out there that we could allege that crab can contain C.R.A.B. and it's not unreasonable for a consumer to expect that there be some crab in their sushi item. I believe that on that, well, along that line, I think that the fact that one menu item has a different word is something that the court in the Gerber case mentioned, that there's not an obligation for a consumer to look all over. And I think it's even particularly relevant on a menu. Expecting and forcing a reasonable consumer to look at the appetizer section of a menu in order to determine what they want on the sushi item of the menu, I think, goes as a fact far, but I think it's a fact to be argued to the trier of fact. But to say as a matter of fact that the consumer is required to look at a portion of a menu that has nothing to do with perhaps what that consumer is looking to buy is an obligation and somehow obviates the defendant's misleading statements within the sushi items that they are looking to buy. But that's assuming that crab spelled with a K is misleading. I mean, is C.R.A.B. actually even a word? That goes to another issue in the case, which is the application of those Fruit Loops cases, of the Crunch Berry case. And I think that our allegations are different in those cases, because in those cases, it's the name of the item that was argued by the plaintiffs as the alleged misleading statement, where we're saying the ingredients in the item here. So can I ask you, if we agree with you that K.R.A.B. mix might be interpreted as having some C.R.A.B., is there any reason to think it would have more than one percent C.R.A.B.? And if that's all that you can convince us might be reasonably assumed, how is one percent C.R.A.B. different from zero percent? I don't really understand, like, the heart of this claim that you're trying to make. Well, I think the factual record is undeveloped, because it's a 12b6 motion. But we believe that the K.R.A.B. has zero percent C.R.A.B., and that any portion greater than that, if in fact true, would just be an issue for fact. But do you have any reason, I mean, maybe you're right, that people might think there's a little bit of C.R.A.B. in there. But if it's so little, I mean, is there any reason to think it's more than a de minimis amount? Well, I think it's hard to say what a de minimis amount is, because the concept is that we're selling you a premium product, and it has some premium ingredient in it. And that's what we say is the misleading argument. And the hint of the premium product is what we're saying is misleading. I think another example... So what tells people this is a premium product? Well, it's in the sushi section of the menu, and that it contains a seafood dish. And the full menu is not there. But with Leave to Mend, we could allege that the asterisk in the menu item that they cut out without giving the asterisk says that it's shellfish. It's an allergen warning. So suggesting that there's... It's the misleading intent here that we're complaining about, and that the fact that it is misleading. And I think that the we have here is something that should go to the trial. So is there any level of expertise about sushi or familiarity with Asian food or something? What are we supposed to assume about an average consumer at P.F. Chang? Well, I think that's something to be developed in the trial court record if we were permitted to do discovery and provide witnesses and provide testimony. But I think that the key fact is that the judge or the court shouldn't replace its impression of what a cheap product is versus an expensive product, which would be, I think, the first. This is the first case to say the price matters with respect to the misleading nature of the claim. But that it should be something that the... Well, the jury will certainly be able to determine, I think, what the reasonable consumer would expect. Because I think it is fair to say that there I think you have to look at the typical average person, not perhaps the wealthier person, because to put a price here... Because one thing that I've noticed in this appeal... But P.F. Chang is kind of expensive, right? So, I mean, is it just any average consumer? Is it an average consumer who can afford to go to P.F. Chang? Or it seems like you might need to have some smaller universe that you're talking about here. Well, I think that could be an issue for later. But for issue for the 12b motion, simply, did we plead enough? As a matter of law, can we say that because of the price point here, that no reasonable consumer could believe that this is real crab at all? I think that's the part that was dangerous in this ruling. I think that's the part that's dangerous precedent in the future. Well, counsel, even if we were to disagree with you about the price point issue, you have K.R.A.B. versus... Or K.R.A.B. mix versus C.R.A.B. And I still have trouble seeing how a reasonable consumer who can ask questions but is deemed to be reasonable with looking at K.R.A.B. mix reasonably believe that that would contain a material amount of C.R.A.B. I think that the standard that the questioning is, again, additional facts that aren't in the record. But I think another factor I think here is that if the court starts making rules like this, the fact that you can ask questions applies to the Froot Loops case today. Today, I can tweet on Twitter and ask directly a representative of Kellogg's within seconds, hey, a question. The fact that I might not because I think it's pointless or I don't know that it exists doesn't change the fact that it is allegedly misleading. Putting these additional... The law was based upon a company's obligation not to mislead consumers in their written word. That's as simple as really the statute says. If you want to mislead people, just don't do it. And that's simply the way the law expects the companies to behave. And to say that a company can just mislead you a little bit as long as you can ask a question later in today's technology age is another risky precedent to set because... Well, counsel, I'm still having trouble getting past the misleading part. If P.F. Chang had said crab mix CRAB and then come in and say, well, any reasonable consumer would understand that crab mix doesn't really have crab in it, even though it's spelled C-R-A-B, I don't think that argument would get very far. But K-R-A-B is not the same, whatever K-R-A-B is. And the standard is more than a mere possibility that this could conceivably be misunderstood by some few consumers viewing it in an unreasonable manner. It may be that there are a couple of people like your client, but that doesn't make it. I mean, as I understand it, your client believed it was C-R-A-B and then within the space of three weeks discovered it wasn't, found a lawyer and a demand letter. Is that right? Your Honor, I think that that's something that we would certainly file a motion to exclude a trial. I don't think it has any relevance here. The right to seek an attorney is simply a separate issue. But what I'll say is that the allegations are that the client believes that he was getting some real crab and that ultimately realized he was not. And that's the basis for the lawsuit. Counsel, do you want to save the rest of your time for rebuttal? You've eaten into a good measure. Thank you, Your Honor. I should, I should do that. Yeah. Thank you. Okay, very good. Let's hear from counsel for the defendant here. And it looks like you all are going to split your time. Correct, Your Honor. I believe I've specifically reserved 12 minutes and my colleague, Mr. Murphy's reserved three minutes. And how are you dividing it? I'm going to take up the 12 minutes, Your Honor. And to the extent there's anything further that Mr. Murphy would like to add, he will. Otherwise, I think we will yield. Why are you dividing? I guess I should have said. We're both co-counsel on this case. And to the extent, you know, there's something that is missed, we'd like to make sure that point is not missed at the back end. Okay. You're not dividing it by issue, in other words. No, Your Honor. Okay, very good. Go ahead. Okay. So, Patrick Wingfield and James Murphy on behalf of P.S. Chains. May it please the court. This appeal presents a straightforward case for affirmance. And the reason is because the district court correctly found when granting P.S. Chains motion to dismiss the following. One, that plaintiff lacks standing to bring its fifth claim for relief for violations of consumer fraud laws of states other than California. And second, and perhaps most notably on this appeal, a reasonable consumer at a sit-down restaurant exercising common sense would not be misled by P.S. Chains menu's use of the words spelled K-R-A-B. Okay. What does crab mix mean? I've never heard of that term. How would I know what a reasonable consumer would know about them? Well, Your Honor, I would start by saying, one that starts to looking at any definition of words, we can go to dictionaries. And as cited in our appellate briefs, the word crab is synonymous with serenity, which is a cheap white fish used to resemble more expensive fish such as crab mix. And it's commonly informally... The word, guess what trips me up is the combination of the word crab, which I agree by itself, I would not, I don't think anyone would reasonably assume that that means real crab. But it's the combination of that word with mix that I think is the plaintiff's strongest argument that because those two words, that phrase in combination doesn't have an established meaning, or at least not one that I think we're able to discern on a 12 and 6 motion. It's possible that some consumers could think that, sure, there's some fake crab in there, but there's also some real crab. And at this stage, we just have no way of making a purely legal determination on that front. So what's your response to that argument? Well, so two points, Your Honor. First, it's not a matter of whether it's a hypothetical or a possibility. The plaintiff must show it's probable that a significant portion of the general public, acting reasonably under circumstances, applying common sense could be misled. And I think one of the second point that was raised by Judge Bennett is that you have here a menu item, and directly below the sushi rolls at issue is the words crab mix spelled with a K. Not C, like the crustacean that lives in the ocean that we all love, crab, C-R-A-B. But immediately inches below that are other menu items that's spelled C-R-A-B. And consequently, the consumer immediately knows that there's a difference. Some menu items are spelled with crab mix with a K, and some other menu items are spelled with a C, C-R-A-B. And adding to that component is that the K in the crab, it's open and obvious. It's the first letter in the first word of crab. It's not a- Yeah, but counsel, the only thing that signifies potentially, and we'd have to have consumer survey evidence, I think, to really know. But the only thing that signifies definitively is that the crab mix certainly is not 100% real crab. Presumably those other menu items that are spelled with a C, those are 100% real crab. I grant you that. What I'm suggesting to you, though, is the problematic combination of crab and mix, crab spelled with a K, that gives rise to the potential for someone to think that, yeah, I know why they're misspelling it, because they're not giving me 100% real crab, but it says mix. And so, presumably, there's some combination of both real and fake crab in there. Well, you know, I again go to the point of possibility versus a probability, the significant portion of the public. And not taking words in a very selective, individualized manner that, similar to the case, Freeman v. Tymeek, where there was a principal issue presented was that the qualifying language in the promotion was nearby, was not unreadably small, and was not hidden. And it was on the same page, just as in this case. And so, I think a reasonable consumer coming into a restaurant that sees crab mix for some items and crab for others spelled with a C denotes the difference. And it invites me to- Did any of those other items say C-R-A-B mix? No, Your Honor. So, it seems like that's a problem for this argument that seeing those items would tell you necessarily that there's no C-R-A-B in this mix. I guess I have a question about whether, what you would call a mix that's partly C-R-A-B and partly what you call K-R-A-B, this white fish. What would a reasonable consumer expect such a mix would be called? I'm sorry, Your Honor, can you repeat- So, if you had a mix of white fish and C-R-A-B, what do you think a reasonable consumer would expect that to be called? Well, Your Honor, I would say here that the ingredient at issue, crab mix, is a proprietary ingredient that's been created by P.F. Chinks. Now, the issue of crab mix is simply not presented because we don't, spelled with a C, that is, simply because we do not have that on the menu at issue. What we have that signifies the significant difference is the spelling deviation, similar to the Froot Loops case where there was F-R-O-O-T versus F-R-U-I-T, or words that are used in conjunction, similar to this case, Captain Crunch's Crunch Berries, right? So, you have a use of words that sometimes can dispel the fact that there is confusion or that there is the probability that a significant portion of the public would be confused as opposed to a hypothetical that is out there that, because of the word mix, there could denote some confusion for very few customers. But I just don't know how a customer would know what to make of mix because it seems like if you had C-R-A-B with white fish, maybe you'd have to call it K-R-A-B mix because calling it C-R-A-B mix would make it seem like all the fish in there is crab. I think, Your Honor, we're dealing with a situation where you're in a restaurant and sit down, consuming a meal, and it is, you know, a nicer restaurant than, say, McDonald's, and it is different than going into a grocery store. And in contrast to going to a grocery store where you have to chase down a clerk who doesn't probably even want to answer your questions about where the item is in a restaurant, the first thing that a waiter does when asking a they ask what you want to eat is, do you have any questions about the menu? In the use of the word crab with a K, in addition to with the word mix, and versus crab with a C immediately below, it invites inquiry. It shows an intent not to deceive in any form or manner. Why don't you just call it imitation crab? Well, Your Honor, one, it's a proprietary ingredient. Two, Well, it is imitation crab, right? What does that mean, it's a proprietary ingredient? Well, it's a proprietary ingredient that's been created by P.F. Chang. So, yes, the point is that crab with a K means imitation crab and is synonymous with surimi, which is that cheaper white fish that I previously referenced that is used to resemble actual crab. Right, so why don't you just tell people that's what it is? That's why I asked you the question. Just tell me what it is. Why do you come up with this fake made-up name that can potentially mislead people? I don't get it. Just say it's imitation crab. Is that something so bad that you'll think it'll drive customers away from ordering it? Well, I guess in that vein, then, do we need to go out and describe to every single consumer, whether verbally or in writing on the menu, about exactly what ingredient, sub-ingredient it contains? Do we need an asterisk for everything? And I think the answer is no, because there's a substantial difference. It's common sense that looking at the two words side by side, which this practically is on the menu, there is denoting a difference in the products that invites, again, inquiry. And I think the social utility about it, which I think is your question, Your Honor, goes to then we need to clarify or we need to qualify every single sub-ingredient of an ingredient. So crab mix, do we need to tell you what kind of celery or broccoli or rice is in it on top of the fact that it's KRAB? The social utility would go endlessly, and to require a waitstaff or to require the social utility in the restaurant industry. Can you tell us anything about the typical P.F. Chang consumer? How much they know about sushi? Well, Your Honor, I would say the sushi rolls are one of the main items in P.F. Chang's. Come to P.F. Chang's for Asian-inspired food that is served and consumed at the restaurant. So I think, you know, if you want to apply a similar analysis doing, say, trademark analysis, there could be a little bit more of a sophisticated-ness to when ordering the food product because, hey, say you didn't go to, again, McDonald's. You didn't go to a grocery store where you're finding fast food items that are already cooked. But it's also, if I understand correctly, like Asian-inspired rather than very traditional, typical, you know, small ethnic shop, right? And so maybe the people who go to P.F. Chang's instead of the sushi place that's more ethnically authentic are going because they don't know as much about sushi. Is that not a fair thing to assume? Yeah, I think that that's fair, Your Honor. And I think to add to the point is when you go to a restaurant, the P.F. Chang's has the right to expect its consumers to act responsibly in common sense. And into that vein, they have the right to expect that a person of ordinary intelligence and at a basic reading level would see the menu and spend more than a fleeting glimpse looking at the words at issue, would notice that the price point, as Judge Anderson found, was low. And similar to the Captain Crunchberries, you know, a reasonable consumer would believe, no reasonable consumer would believe in that a Mosse-priced breakfast cereal called Captain Crunchberries contains real fruit. And that kind of goes back to my point of the menu or the definitions because there's no authority cited to the contrary. That is, what does crab mix or crab mean by the plaintiff? All we have is presented is in our brief, the answering brief, which is establishing that crab means with a K, imitation crab. Well, I think in the reply brief, you'd probably forget what your opponent cited to us. We can't take into account any of that. I think you all are way off base. This is a 12 v. 6 motion. Listen, sir, you may well be right about what reasonable P.F. Chang consumers ultimately do or do not believe about crab mix. I think my problem with your motion, and I am not a reasonable consumer. Judge Bennett is not. Judge Friedland is not. And was Judge Anderson, who's the district judge? He's not either. And so whatever we might think about if we went into your restaurant and looked at your menu, whether we would be misled is totally irrelevant. And this just strikes me as a case that needs to go forward. You may well be proved right at summary judgment when survey evidence is put before the court that actually nobody's misled by this. Or if they were, it certainly wasn't material to any purchasing decision. As Judge Friedland was saying, it has 1% real. They thought it had 1% real crab or who knows. But this is a 12 v. 6 motion. I just don't think this is the kind of case you can dismiss as a matter of law. Your Honor, could I be heard for a second? You should, because your time is almost up. So yes, please jump in. It won't take long. I'll be brief. Sure. You know, we all apply different standards, but the law applies a reasonable consumer standard. And I may not be a reasonable consumer. Judge Bennett may not be a reasonable consumer, neither is Judge Friedland, but we have to have the standard. So the question here really is, okay, you go into a restaurant, you have a menu, you have something called crab, K-R-A-B mix, right above a menu item that is crab, C-R-A-B. I think the harder question would be if it were crab with a C mix. That would cause some confusion. But crab with a K does not. Would a reasonable consumer, applying the standard that the law has established, that we are not necessarily reasonable consumers, but applying the standard, would a reasonable consumer be confused, be deceived that this particular item contains crab? And I submit that is what Judge Anderson decided when he was called upon to question whether this case should go forward or not. He concluded that a reasonable consumer would not be confused. And I submit, Your Honor, that what you raised in your question, well, you know, I go to a restaurant, I've never heard of thousands of them involving whitefish. But the fact of the matter is, you go into a restaurant, you sit down, you have a cocktail, the server comes back and says, you didn't have any questions about the menu. Well, if you're confused with crab mix here and crab right here, the reasonable consumer would say, what is crab mix? Tell me what that is. And I think that is exactly what would not be confused. There is no evidence and no allegations that PF Chains attempted to deceive the consuming public. Sir, I think your suggestion that the customer would need to ask is itself a potential problem. Because what if the person says, I'm assuming this is like, what, 50-50 real crab, you know, fake crab? And then the wait person would have to say, no, actually, it's 100% fake crab. That's the problem. You can't rely upon the customer asking for clarification. And I'm not, Your Honor, what I'm suggesting is that a reasonable consumer seeing the difference between K and C, if they had confusion, which they shouldn't have, would ask the question, what's the difference between K and C? It's like, you know, what's the difference between corn and kettle corn, the candy that you get on Halloween? It's just basic intuitive sense that there's a difference. Well, I mean, I agree with you that we have a standard that should be enforced as a matter of law in a totally obvious case. And I think that Diet Dr. Pepper case is a great example of that. If somebody comes in, as occurred there, and said, oh, well, diet, I thought that meant was going to help me lose weight or, you know, whatever the claim was. It was just preposterous on its face, right? That case, I get. Yeah, on a 12 v. 6, we can say, even as judges, we can say no reasonable consumer in the right mind could possibly have thought whatever you're alleging. I'm just saying that here, in this case, because crab mix, those two words together, at least not to my knowledge, it doesn't have, in the average consumer's mind, a set meaning. We're like, oh, no, everybody knows what that is. That's why I have a problem with dismissing this at the 12 v. 6 stage. Well, I would agree with your honor if it were crab mixed with a C, but it's not. And if you take a look at the circumstances of this particular case, and of a PF Chang restaurant, you just can't ignore the fact that there is crab with a C on the menu. And then there's crab mixed on the menu as well. A consumer, a reasonable consumer would not be confused between the two. Gee, the sushi roll has real crab spelled with a K. Well, I've never seen, whether it be a Dungeness crab, or Maryland blue crabs, any crab spelled with a K. They're always spelled with a C. And everybody knows that. Okay, thank you very much for both of your arguments. Let's give counsel for a plaintiff his time for rebuttal. Thank you, your honor. I think on the issue that was just raised, that the asking the question is not the law, as the court noted. It's the statement, is it misleading? And it's certainly not the law in 12 v. 6 motions. And I think the language used by counsel is important. A proprietary ingredient suggests that it's not reasonably known, because it's proprietary. It's almost the word. And in terms of this concept of the reasonable consumer visiting the restaurant, well, first, nobody, as we all know, nobody's really visiting restaurants these days. And number two, the, and this goes to one of the issues we raised, I'm sorry, that Ateli raised in their brief, that the concept of the menu, that the law doesn't apply because the menu isn't an advertisement. And I think the concept of that and the concept of a sit-down restaurant are not the law. The law is the reasonable consumer. And to the reasonable consumer, a typical person, a menu means the dollar menu. It doesn't mean P.F. Chang's. It means the dollar menu. And the law is written around that. I was asking you about this. I don't really understand why we would assume that it's an average McDonald's customer instead of an average P.F. Chang's customer. I mean, it's not a dollar menu. So I don't understand why we should assume it is. Now, you might still win, but it seems like we should be thinking about a reasonable consumer who would read this menu, which requires buying things from P.F. Chang. Well, I don't think the law says reasonable consumer for the restaurant. It's a law that's written generically for everybody in all businesses. And I think that it certainly could be. We don't really know what the standard is on that particular point. Maybe we'll be back here later if there's a ruling on what that standard means and we have a disagreement about that. And then the court will have to determine that. But I still have a lot of trouble getting past why anybody, especially somebody who is a reasonable consumer, would think that K.R.A.B. is C.R.A.B. I mean, I can't get past that, that a substantial number of reasonable consumers, even if they don't know what K.R.A.B. is or K.R.A.B. mixes, why they would ever think that that was C.R.A.B. Even if C.R.A.B. weren't otherwise on the menu, but with C.R.A.B. on the menu, I just don't understand how any reasonable consumer would make the leap that K.R.A.B. is real crap. That's where I'm having trouble. Well, I can certainly recognize that point of view, but I believe if we go to that route, then the history of law on 12b6 motions on this area would be fundamentally changed because the if you look at the other cases, they're all based upon either grammar or the other issue besides grammar is the disclosure in the ingredient list. So what the court's saying now is, okay, first we have grammar. The grammar is not misleading. The sweepstakes says that you didn't win. It says you might have won. And if you read it, then you can't rely on it. And if you read the ingredients, it doesn't say real fruit. It says something besides you. It says cereal, grain or whatever. But here we're now saying that, okay, first you can look at the grammar. They don't actually promise you anything. I'm looking at the word crab doesn't mean K.R.A.B. Whatever it means. I don't know why a reasonable consumer would think that means C.R.A.B. Even if K.R.A.B. is a word, which I don't know it is, I don't know why a reasonable consumer would think it means a different word. Well, I think the important thing there is that we don't replace our experience with the reasonable consumer's experience. And I think on that note, the way it means it's actually not defined in Webster. Ceremi is defined in Webster, at least according to the internet version of Webster. K.R.A.B. isn't. K.R.A.B. is defined in Wiktionary according to the Pelley's brief. Wiktionary, I'm not familiar with as a recognized academic website or publication, but in terms of what K.R.A.B. means, I think the fundamental thing along that line is along with our UCL claim, which is that there needs to be some value to this action. And I think that was one of the questions raised by the court, Judge Watford, what's the value of K.R.A.B. mix versus imitation K.R.A.B. or imitation K.R.A.B. mix or some other more accurate non-proprietary description of an ingredient. And I think that's really where it comes down to is that that action by the defendant to choose to label their ingredient in the item ingredient list with something that is, with something that we allege is misleading, is the claim. And it's the claim on a 12D6 motion that was denied without leave to amend. We'd ask that the court reverse for the reasons stated in the, there's several different reasons, but we saw the reasons set forth in the paper. Okay, great. Thank you very much. We appreciate your arguments. The case just argued is submitted and we are adjourned for the day. Thank you, Your Honor. Thank you, Your Honor.
judges: Watford, Friedland, Bennett